**In re Harold BARSKY and Jay Barsky i/t/a N. Barsky & Sons (A Partnership), Debtors,**

**William A. MEEHAN, Trustee, Plaintiff,**

v.

**COMMONWEALTH OF PENNSYLVANIA and Joseph A. Sullivan, Sheriff of the City and County of Philadelphia and Philadelphia National Bank, Defendants.**

Bankruptcy No. 80–02400K.
Adv. No. 80–0576K.

United States Bankruptcy Court,
E. D. Pennsylvania.

Oct. 20, 1980.

Chas. M. Golden, Philadelphia, Pa., for debtors.

William A. Meehan, Philadelphia, Pa., trustee.

Marvin Krasny, Philadelphia, Pa., for plaintiff/trustee.

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

The issue before us is whether the trustee of a debtor in a chapter 11 proceeding is

entitled to a turnover of the debtor's inventory seized in execution proceedings prior to bankruptcy in an action by the defendant, Commonwealth of Pennsylvania, to enforce a lien for unpaid sales taxes. Because we find that the inventory is required by the debtors to continue their business, effectuate a plan of reorganization and avoid liquidation in bankruptcy, we will grant the requested relief.

## FINDINGS OF FACT

1. The defendant, Commonwealth of Pennsylvania ("Commonwealth"), is a holder of tax liens against the debtors, docketed and indexed in the Court of Common Pleas of Philadelphia County under No. 1763 of the June Term, 1974.

2. On September 15, 1980, the Commonwealth issued a Writ of Execution on lien No. 1763 against the debtors herein.

3. The Sheriff of Philadelphia County levied on September 15, 1980, upon the debtors' property consisting of the jewelry store located at 724 Sansom Street and 706–708 Sansom Street, Philadelphia, Pennsylvania, and on bank accounts of the debtors located in Philadelphia, Pennsylvania.

4. On September 23, 1980, the Sheriff of Philadelphia County, acting on behalf of the Commonwealth of Pennsylvania, did remove from the premises of the debtors certain inventory consisting of gold, silver, diamond and other precious metal and stones, and had same removed to the Philadelphia National Bank at Broad and Chestnut Streets, Philadelphia, Pennsylvania, for safe keeping.

5. The signatories at the safe deposit vault at the Philadelphia National Bank are the Sheriff of Philadelphia County and the Commonwealth of Pennsylvania.

6. The property seized by the Sheriff was inventoried and its value appraised in excess of one million dollars ($1,000,000.00). [Exhibit T–1, admitted into evidence October 3, 1980].

7. The lien of the Commonwealth as of June Term 1974, (No. 1763) was reportedly valued at $579,000.00 and as of September 15, 1980, was listed as $615,443.91. [Exhs. T–2, D–2, D–3].

8. On September 24, 1980, the debtors filed a petition under chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 1101 et seq.

9. William A. Meehan, Esquire, was appointed trustee on September 25, 1980, pursuant to 11 U.S.C. § 1104, and is duly qualified and so acting.

10. The items levied upon by the Sheriff on September 15, 1980, and removed on September 23, 1980 were property of the debtors.

11. The removal of the debtors' property by the Sheriff was a transfer for the benefit of the Commonwealth on account of an antecedent debt owed by the debtors.

12. The transfer of the property on September 23, 1980 was made within ninety (90) days before the date of the filing of the chapter 11 petition on September 24, 1980.

13. The Commonwealth, as a result of said levy and transfer, received more than it would have if this were a case under chapter 7 of the Bankruptcy Code, if the transfer had not been made and if the Commonwealth received payment of its debt to the extent provided by the provisions of the Bankruptcy Code.

## DISCUSSION

In this case of first impression in this district, the trustee has requested two (2) separate and distinct forms of relief. The complaint seeks the turnover of property levied and attached one (1) day prior to bankruptcy and a declaration by the court that such a transfer was a voidable preference pursuant to § 547 of the Bankruptcy Reform Act of 1978 ("Code").

Section 542 of the Code, in pertinent part, provides that an entity

... in possession, custody, or control ... of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property unless such property is of inconsequential value or benefit to the estate.

An entity under the Bankruptcy Code includes any "persons, estate, trust, governmental unit." 11 U.S.C. § 101(14). "Governmental unit" includes the United States, State or Commonwealth. 11 U.S.C. § 101(21). Thus, if the property seized is property of the estate that the debtor may use, sell or lease under § 363 of the Bankruptcy Code, and if it is property of more than inconsequential value or benefit to the estate, the State may be required to return the property.

Section 363 authorizes a debtor or trustee to use, sell or lease "property of the estate." Consequently, unless the jewelry seized by the Commonwealth is "property of the estate," the Commonwealth cannot be compelled to turn it over to the use of the plaintiff.

"Property of the estate" consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The legislative history indicates that the scope of Section 541 is extremely broad, and that it "... includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6), and all other forms of property currently specified in section 70a of the Bankruptcy Act § 70a, as well as property recovered by the trustee under section 542 of proposed title 11, if the property recovered was merely out of the possession of the debtor, yet remained 'property of the debtor.'" H.R.Rep. 595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868.

The Commonwealth contends that the pre–bankruptcy seizure divested the debtors of all interest in the property and therefore, the court may not compel its return.

While this issue may be one of first impression in this district, other bankruptcy courts have considered this matter. In the case of *Aurora Cord and Cable Company, Inc.*, 2 B.R. 342, 5 BCD 1310, 1 CBC 486, (Bkrtcy.N.D.Ill.1980), *appeal pending*, No. 80C 396 (N.D.Ill.) the Internal Revenue Service ("I.R.S.") levied for taxes on the debt-

or's property and, two (2) days later, the debtor filed a chapter 11. The I.R.S. refused to turn over the levied property to the debtor, relying on the case of *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). In the *Phelps* case, the I.R.S. levied on funds of the debtor, in the possession of an assignee for the benefit of creditors, prior to a bankruptcy proceeding. The narrow issue before the Supreme Court was whether the levy by I.R.S. was sufficient to place the property in the constructive possession of the I.R.S. and defeat the summary jurisdiction of the bankruptcy court. The court held that a pre–petition levy by I.R.S. gave it constructive possession of the property, and that the bankruptcy court lacked summary jurisdiction to determine rights to the property, and a plenary suit was necessary.

As stated by the court in *Aurora* :

"One of the purposes of the Bankruptcy Reform Act of 1978, and perhaps the principal reason for its enactment, was to eliminate the summary–plenary impediment to efficient administration of bankruptcy matters and to repeal the result in *Phelps*."

The Reform Act grants to the bankruptcy court, as an adjunct of the district court, pervasive jurisdiction over the debtor and all of its property, including property in dispute. 11 U.S.C. 105, 28 U.S.C. 1471(a), (c) and § 1651 (All Writs Act).

The court, in *Aurora*, recognized that, without the use of property, the debtor's effort to reorganize would be futile and would defeat the very purpose of the legislation. The court recognized that the interests of I.R.S. could be protected by the "adequate protection" provisions of Section 361 and directed I.R.S. to turn over the property.

Similarly, the case of *Troy Industrial Catering Service*, 2 B.R. 521, 5 BCD 1243 (Bkrtcy.E.D.Mich.1980), involved a pre–petition levy by the State of Michigan on property of the debtor. In that case, the court also rejected the *Phelps* case and required the state to turn over the property

to the debtor pursuant to Section 542 holding that the seizure of the property was "merely a step in the collection process" and that seizure "does not in and of itself operate to transfer title to the government." *Id.*, 2 B.R. at 523, 5 BCD, at 1244 and cases cited therein.

The courts, in both *Aurora* and *Troy*, had before them, the Opinion in the case of *Bush Gardens v. United States of America*, 5 BCD 1023 (Bkrtcy.D.N.J., 1979), where the court held that the I.R.S., by virtue of a pre–petition levy, had a significantly greater interest in the property, approaching that of ownership. Both courts were critical of the result reached in *Bush Gardens* believing that the court had misread the *Phelps* case. *Phelps* did not decide that property levied upon by the I.R.S. was forever barred from inclusion in the debtor's estate, only that the bankruptcy court lacked summary jurisdiction. The Code makes it clear that the jurisdiction of the bankruptcy court is now all inclusive. Secondly, the court in *Bush Gardens* recognized that the debtor still had property rights in the levied upon property but that the I.R.S. acquired a "significantly greater interest". There is nothing in Sections 541 or 542 of the Code to suggest the concept of a "significantly greater interest" and such a test is inconsistent with the Code and the intent of Congress.

In the case of *Winfrey Structural Concrete Co. v. Internal Revenue Service*, 5 B.R. 389, 6 BCD 695 (Bkrtcy.D.Colo.1980), the court, in reviewing another pre–petition levy, held that, under the provisions of the Internal Revenue Code, after the levy, the debtor lost his rights to the property; and, therefore, I.R.S. did not have to release the property as it was not property which the debtor could use under Section 363. A reading of this opinion indicates that the bankruptcy judge relied upon the *Phelps* decision, and the cases decided under the Bankruptcy Act, to indicate that the levy deprived the debtor of certain property rights. The court recognized that the prop-

erty rights remaining under the I.R.S.Code did not, under the prior case law, include the right to possession.

■ Because we believe that the holding in *Phelps* has been repealed by the enactment of the new Bankruptcy Code and that the *Aurora* and *Troy* holdings are controlling here, we again find that the property transferred was "property of the estate" and thus returnable. The Commonwealth is an attaching lien creditor in constructive possession of the property. The debtors however, have not lost their interest in the property. Defendants have failed to cite us to cases which would support such a proposition. By the levy, the Commonwealth has acquired the right to sell the debtors' property to satisfy its tax lien. That right is, however, subordinate to the rights granted to the trustee by Sections 542 and 547 of the Bankruptcy Code.

■ The turnover order in the instant case is particularly appropriate in light of the equitable power of this court and the spirit behind corporate reorganization. If the Commonwealth is permitted to retain the debtors' assets, it is undisputed that the debtors will be forced into liquidation. The essence of chapter 11, however, is to prevent the unnecessary dismemberment of viable businesses and to provide a maximum distribution to creditors who would be likely to receive nothing in the event of liquidation.

Allowing the property levied by the Commonwealth to be retained by them effectively decides that the debtors are barred from proposing a plan of reorganization in satisfaction of creditors. It is clear from the legislative history of the Bankruptcy Reform Act that Congress was aware of situations where giving a secured or lien creditor an absolute right to its possessory interests might be seriously detrimental to the rehabilitation of the debtors. Therefore, Section 361 was enacted to provide the means by which conflicting rights in the debtor's property may be protected.[1]

---

1. The parties, by formal stipulation, approved October 14, 1980, have agreed that if the trustee is successful in the instant turnover request and thereafter decides to operate the business

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the proceedings pursuant to 28 U.S.C. § 1471.

2. The property levied upon by the Sheriff of Philadelphia County is property which the trustee may use, sell or lease under § 363, 11 U.S.C. § 363.

3. The Commonwealth of Pennsylvania, an entity pursuant to § 101, 11 U.S.C. § 101, is required to turn over said property to the trustee and to account for same in accordance with § 542, 11 U.S.C. § 542.

4. At the time of the levy, the debtors were presumed insolvent pursuant to § 547(f), 11 U.S.C. § 547(f).

5. The transfer of the property to the Commonwealth, as a result of the Sheriff's levy, is a preference which is voidable pursuant to § 547, 11 U.S.C. § 547.

## ORDER

AND NOW, to wit, this 20th day of October, 1980, upon consideration of the Complaint of the Trustee, the Answer filed thereto by the Commonwealth of Pennsylvania and after trial of these proceedings, consideration of the legal memorandum filed by counsel, the court, pursuant to the findings of fact and conclusions of law heretofore entered in these proceedings, it is hereby

## ORDERED AND DECREED

1. That the Commonwealth of Pennsylvania, the Sheriff of Philadelphia County, and Philadelphia National Bank shall turn over to the trustee all property in their possession as a result of a writ of execution and levy made on September 15, 1980 and issued out of the Court of Common Pleas of Philadelphia County, June Term 1974, No. 1763.

2. That the Fidelity Bank, First Pennsylvania Bank, Central Penn National Bank, Continental Bank and Philadelphia Saving Fund Society shall turn over to William A. Meehan, Esquire, the trustee in bankruptcy, any property of the debtors, Harold Barsky and Jay Barsky, Ind. & t/a N. Barsky & Sons.

3. That the trustee shall file bond, with corporate surety, in the increased sum of $1,200,000.00.

4. That the lien of the Commonwealth of Pennsylvania out of the Court of Common Pleas of Philadelphia County is void pursuant to Section 547 of the Bankruptcy Code.

of the debtors, then all counsel will meet in an effort to reach a settlement whereby adequate assurance would be provided to the Commonwealth. The court therefore will not make any findings regarding adequate assurance or protection at this time.