In the Matter of BRISTOL CONVALES-
CENT HOME, INC., Debtor.

BRISTOL CONVALESCENT HOME,
INC., Plaintiff,

v.

INTERNAL REVENUE SERVICE Edward W. Maher, Commissioner, Department of Income Maintenance, State of Connecticut, Defendants.

Bankruptcy No. 2–81–00624.
Adv. No. 2–81–0331.

United States Bankruptcy Court,
D. Connecticut.

July 7, 1981.

Jerome E. Caplan, Hartford, Conn., for plaintiff.

Arnold I. Menchel, Asst. Atty. Gen., State of Conn., Hartford, Conn., for the defendant, Dept. of Income Maintenance, State of Conn.

Jonathan B. Forman, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant, Internal Revenue Service.

## MEMORANDUM AND PARTIAL JUDGMENT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

This proceeding requires the court to resolve an issue of first impression in the District of Connecticut—whether the bankruptcy court has the power to compel the turnover of property of the debtor levied upon by the Internal Revenue Service prior to the filing of a petition. On May 26, 1981, the U. S. Internal Revenue Service (IRS), pursuant to 26 U.S.C. § 6331 et seq., levied upon the State of Connecticut with respect to monies owed by the State to Bristol Convalescent Home, Inc. (BCH), and payable on June 15, 1981. The levy was made to satisfy over $100,000 in unpaid withholding and FICA taxes for the first quarter of 1981. Thereafter, and as a direct result of the IRS levy, BCH filed its petition pursuant to Chapter 11 of the Bankruptcy Code on June 10, 1981, and has since operated its business as debtor-in-possession.

On June 15, 1981, BCH filed its complaint initiating this proceeding, naming as defendants IRS and the Commissioner of the Department of Income Maintenance of the State of Connecticut (State). The complaint alleges that because of the IRS levy, the State refuses to pay BCH approximately $100,000 due it and that it needs these funds as liquid capital to operate the convalescent home and to rehabilitate itself successfully. BCH asks that the defendants be ordered to turn over monies due it from the State and that it be permitted to use these monies in the ordinary course of its business "upon such terms and conditions as will give the defendant IRS adequate protection by way of additional liens or replacement liens on existing and/or future property of the debtor".

The IRS, in its answer and counterclaim, states that the property levied upon is not property of the debtor's estate because its levy had the effect of placing the debt owed to BCH in the constructive possession of the United States. The IRS also denies that BCH is able to give it adequate protection and requests that the court dismiss the complaint and determine in the alternative that (1) the automatic stay of 11 U.S.C. § 362 is inapplicable to the IRS with respect to its pre-petition levy or (2) if the stay is applicable, that the court give it relief therefrom and require the State to turn over to the IRS $102,169.92 from the funds owed by the State to BCH. The State's answer admits that it owes BCH the money and states that it will turn it over to whomever the court designates.

At a pre-trial conference on June 29, 1981, IRS and BCH agreed that a threshold issue to be resolved was whether or not the pre-petition levy of the IRS had the effect of removing the levied-upon property from the debtor's estate and thus rendering it not subject to a turnover order of this court. The parties further agreed that the court would resolve this issue by July 7, 1981 upon the pleadings before it and briefs to be submitted by BCH and IRS.

Although the issue is new in this district, it has been recently considered by a number of bankruptcy and district courts. *In re Bush Gardens, Inc.*, 10 B.R. 506, 5 B.C.D. 1023 (BC D. N.J. 11/21/79); *Matter of Troy Industrial Catering Service*, 2 B.R. 521, 5 B.C.D. 1243 (Bkrtcy., E.D.Mich. 1980); *Matter of Aurora Cord and Cable Co., Inc.*, 2 B.R. 342, 5 B.C.D. 1310 (Bkrtcy., N.D.Ill. 1980); *In re Winfrey Structural Concrete Co.*, 5 B.R. 389, 6 B.C.D. 695 (Bkrtcy., D.Colo. 1980); *In re Parker GMC Truck Sales, Inc.*, 6 B.C.D. 899 (BC S.D.Ind. 8/25/80); *Cross Electric Company, Inc. v. U.S.*, 9 B.R. 408, 6 B.C.D. 1348 (W.D. Va. 10/3/80); *In re Barsky*, 6 B.R. 624, 6 B.C.D. 1216 (Bkrtcy., E.D.Pa. 1980); *In re Paukner*, 10 B.R. 29, *unreported decision*, (Bkrtcy., N.D.Ohio, 1981); *In re Avery Health Center, Inc.*, 8 B.R. 1016, 7 B.C.D. 210 (W.D.N.Y.1981); *In re Whiting Pools, Inc.*, 10 B.R. 755, 7 B.C.D. 658 (Bkrtcy., W.D.N.Y.1981); *In re Alpa Corporation*, 11 B.R. 281, 7 B.C.D. 791 (BC D.Utah 5/15/81). These decisions have split almost evenly in

result, four bankruptcy courts and one district court supporting the claim of IRS (*Avery, Bush Gardens, Winfrey, Parker GMC*, and *Paukner*), and five bankruptcy courts and one district court supporting the position of BCH (*Cross Electric, Troy, Aurora, Barsky, Whiting Pools*, and *Alpa*).

Generally speaking, the cases finding that a pre-petition levy by the IRS places the property levied upon beyond the reach of a bankruptcy trustee or debtor-in-possession rely upon the opinion in *Phelps v. U.S.*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). That case is said to hold that a tax levy gives the IRS "full legal right" to the levied-upon property as against a bankruptcy receiver. IRS claims that, under *Phelps*, the collection powers provided for by 26 U.S.C. § 6331(a) and (b)[1] are so broad that the taxpayer is left with insufficient interest in the levied-upon property to have such property fall within the terms of 11 U.S.C. § 541 and § 542.[2] That is to say, since a levy pursuant to § 6331 permits the IRS to sell the property and provides the taxpayer only with a right to a surplus (26 U.S.C. § 6342) or a right to redeem (26 U.S.C. § 6337), such levy prevents the levied-upon

property from becoming property of the estate which can be used, sold or leased. The cases supporting the position of BCH find that *Phelps* is inapplicable inasmuch as that case involved an issue of summary versus plenary jurisdiction under the former bankruptcy act, a distinction abolished by the new Bankruptcy Code. Further, it is said that the IRS levy, no matter how extraordinary under the Internal Revenue Code, remains a *lien*, prior to actual sale of the property, and does not prevent the property levied upon from becoming property of the estate upon the filing of the bankruptcy petition, thereafter subject to the provisions of § 542 requiring turnover of said property, subject to the lien, to the trustee or debtor-in-possession.

I believe that the cases supporting the position of the debtor-in-possession are the better reasoned, and I generally subscribe to the arguments set forth therein without further elaborating upon them here. Only the following need be added. The court adopts a construction which is most likely to accommodate the intent of both the Bankruptcy Code[3] and the Internal Revenue

1. *26 U.S.C. § 6331.*
   (a) *Authority of Secretary or Delegate.* If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax ... by levy upon all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax ....
   (b) *Seizure and sale of Property.* The term 'levy' as used in this title includes the power of distraint and seizure by any means .... In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

2. 11 U.S.C. § 541 provides in pertinent part:
   (a) The commencement of a case under ... this title creates an estate. Such estate is comprised of all the following property, wherever located: (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.
   11 U.S.C. § 542 provides in pertinent part:
   (a) ... an entity, other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell or

lease under section 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

3. The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders. The premise of a business reorganization is that assets that are used for production in the industry for which they were designed are more valuable than those same assets sold for scrap. Often, the return on assets that a business can produce is inadequate to compensate those who have invested in the business. Cash flow problems may develop, and require creditors of the business, both trade creditors and long-term lenders, to wait for payment of their claims. If the business can extend or reduce its debts, it often can be returned to a viable state. It is more economically efficient to reorganize than to liquidate, because it preserves jobs and assets.
   House Report No. 95–595, 95th Cong., 1st Sess. (1977) 220, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6179.

Code.[4] The position taken by the IRS results in the determination as to when a business entity may remain in operation being made solely by the IRS. Under its theory, whenever IRS believes it appropriate and thereupon levies, no discretion would remain in the bankruptcy court to consider whether the IRS debt can be adequately protected, and whether to allow the business to operate not only for the benefit of the debtor and its creditors, but also for the benefit of the community at large. I wish to point out, in view of some of the fears expressed by the IRS during the pre-trial conference, that when the Supreme Court decided *Phelps,* it stated what the concerns were in wishing to avoid the jurisdiction of the bankruptcy court:

> There is a significant difference in the result of a summary adjudication of the tax claim in the bankruptcy court and the result of its adjudication in a plenary suit:
>
> "The difference between a summary and plenary proceeding in this context is not merely a matter of the relative formality of the respective procedures. The consequence of a summary turnover order is to subject the property in question to administration as part of the bankrupt estate. Where the government has a tax lien on the property, the consequence of the turnover is to subordinate that lien to the expenses of administration and priority wage claims. See Section 67c(3) of the Bankruptcy Act, 11 U.S.C. § 107(c)(3). In contrast, if the property is not subject to summary turnover, it may be brought into the bankrupt estate only if the receiver is able to defeat the government's underlying tax claim in a plenary proceeding, i. e., a suit for refund. Thus, in

a case where the underlying tax claim is sound, for the government the difference between a summary and a plenary proceeding is the difference between holding the property subject to prior payment of administrative and priority wage claims and holding it outright". Brief for United States 19, *Id.* at 333 n. 1, 95 S.Ct. at 1730 n. 1.

Such is no longer the law. Section 363(c) and (e) of the Bankruptcy Code provides that this court shall prohibit or condition the use of cash collateral "as is necessary to provide adequate protection" of the interest of an entity therein. Methods of adequate protection are provided for by 11 U.S.C. § 361, which mandates that whenever the security of a secured claimant is to be used, sold or leased by a debtor-in-possession, the secured party must ultimately be granted the "indubitable equivalent" of his security. Section 507(b) of the Code also provides for a so-called "super priority" whereby any deficiency of the adequate protection is to be made up before any administration expenses can be paid.[5] See *Collier on Bankruptcy,* (15th ed.) ¶ 507.05 at 507–46–47 (1980).

I thus conclude that the money due from the State of Connecticut to Bristol Convalescent Home, Inc. is property of the estate and subject to a turnover proceeding under § 542. The hearing on the remaining issues raised by the complaint and the counterclaim will proceed as scheduled.

---

**4.** "Taxes are the life blood of government, and their prompt and certain availability an imperious need". *Bull v. U.S.,* 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935).

**5.** *11 U.S.C. § 507. Priorities.*

(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such credi-

tor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.