In the Matter of DAY RESOURCE AND DEVELOPMENT CO., INC., Debtor.

DAY RESOURCE AND DEVELOPMENT CO., INC., Plaintiff,

v.

FIRST INTERSTATE BANK OF IDAHO, N. A., formerly Bank of Idaho, N. A., Defendant.

FIRST INTERSTATE BANK OF IDAHO, N. A., Plaintiff,

v.

DAY RESOURCE AND DEVELOPMENT CO., INC., Defendant.

In the Matter of IDAHO FARM SUPPLY AND LEASING CO., INC., Debtor.

FIRST INTERSTATE BANK OF IDAHO, N. A., Plaintiff,

v.

IDAHO FARM SUPPLY AND LEASING CO., INC., Defendant.

Adv. Nos. 82–0242, 82–0244 and 82–0243.

United States Bankruptcy Court, D. Idaho.

June 17, 1982.

Judd & Judd, Post Falls, Idaho, for First Interstate Bank of Idaho.

Grudem, Verby & Elsaesser, Sandpoint, Idaho, for Day Resource And Development Co., Inc. and Idaho Farm Supply And Leasing Co., Inc.

## MEMORANDUM DECISION FINDINGS OF FACT AND CONCLUSIONS OF LAW

M. S. YOUNG, Bankruptcy Judge.

These matters are before the court following trial. Three interrelated actions were consolidated for trial. In Day Resource & Development Co. (Day Resource) v. First Interstate Bank, No. 82–0242, the debtor-in-possession seeks turnover of property which is in the possession of the bank pursuant to a state court order. In First Interstate Bank v. Day Resource & Development Co., No. 82–0244, and First Inter-

state Bank v. Idaho Farm Supply & Leasing Co. (IFSL), No. 82–0243, the bank seeks relief from the 11 U.S.C. § 362 stay in order to liquidate the property in the bank's possession.

I find the essential facts to be as follows. Day Resource intended to build a plant for the production of compressed wood pellets for sale as an alternative fuel to oil or gas and, in August 1979, borrowed $200,000 from the bank, followed by an additional $1,050,000 borrowed in July 1980, for this purpose. This indebtedness is evidenced by promissory notes which require monthly payments of approximately $16,000. Only one $1,000 payment has ever been made on these notes. Debtors granted the bank security interests in all of their assets to secure the above obligations. Jason Day, as the controlling stockholder of the debtor corporations, executed guarantees as well as additional security agreements.

In March 1981, the bank commenced a claim and delivery action in state court. In August of 1981, the parties entered into an agreement as a result of which an order in the state court was entered granting the bank immediate possession of all collateral and requiring immediate turnover of all the collateral to the bank. Warranty deeds to certain Boise property were given the bank in satisfaction of Jason Day's personal guarantee. However, by a contemporaneous "covenant not to enforce order", debtors received possession and use of the collateral for a period lasting seven months from the date of the order during which time the bank agreed not to enforce the provisions of the state court order. The order, dated August 31, 1981, stated that the bank was to sell the property upon possession and apply the proceeds "as provided by Idaho Code 28–9–504 et seq." The order also recited that the bank had the right to a deficiency judgment should the proceeds of the collateral be insufficient to pay the debt.

The covenant not to enforce order expired on March 31, 1982, and, as debtors had failed to meet the terms of the agreement, the bank, on April 1, 1982, took possession of the collateral. At 5:00 that same day, debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code.

■ The threshold issue is whether or not a Bankruptcy Court can order the turnover of collateral where the secured party has obtained possession and the right to liquidate the collateral before an order for relief under the Bankruptcy Code has been entered. Two lines of authority on the issue have evolved. One is represented by *In re Cross Electric Co., Inc.*, 664 F.2d 1218, 5 C.B.C.2d 1273 (4th Cir. 1981) which holds that, in circumstances analogous to the case at bar, it cannot do so because only the debtor's right to redemption passes to the debtor-in-possession under § 541 of the Code and because, under § 542 of the Code, only an entity in possession of property which a trustee may use, sell or lease under § 363 is required to turn over the same even if a debtor can offer the creditor adequate protection of its interest in the collateral.

The Code can certainly be read to support the *Cross* decision, however, such a reading defeats the general rehabilitative theories of chapters 11 and 13 of the Code. In the well reasoned case of *In re Whiting Pools, Inc.*, 674 F.2d 144, 8 B.C.D. 1138, 5 C.B.C.2d 1584 (2d Cir. 1982), the Court of Appeals held that an entity in possession of a debtor's property, which was subject to sale in satisfaction of the debtor's indebtedness to it, was required to turn over such property to the chapter 11 debtor-in-possession if that debtor could offer adequate protection for the creditor's security interest in the property. While the Court of Appeals for the Second Circuit noted the conflicting bankruptcy and district court opinions on the subject, and the contrary result in *Cross*, it concluded that the language of the Code, when taken in conjunction with precedent, legislative history and the rehabilitative policies of the Code, required the conclusion that such property be returned to the debtor's estate assuming adequate protection and a reasonable possibility of successful reorganization. I believe that *Whiting Pools* is the correct rule.

In *In re Ferguson*, No. 81–00775, (October 19, 1981) I arrived at essentially the same conclusion as the *Whiting Pools* court. In deciding *Ferguson*, I relied upon *In re Bristol Convalescent Hospital*, 12 B.R. 448, 4 C.B.C.2d 1167, 7 B.C.D. 1151, (Bkrtcy.D. Conn.1981), which I still consider a well reasoned opinion. To read the cross references between §§ 363 and 542 as limiting turnover to only that property which a debtor has the right to possess on the date of filing in Bankruptcy Court is to ignore the function and substance of Chapter 11 as a rehabilitative device.

Reorganization generally under the Code, and § 542 as well, anticipates that property held by the debtor, or previously held by the debtor and in which he still retains an interest, which is necessary for reorganization, shall be turned over to the trustee or the debtor-in-possession if other entities having an interest in such property are adequately protected. See, for example, § 363(e) which provides:

> "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.

■ At the time the debtors filed their petitions for relief in this court, the bank had possession of debtors' property with the right to liquidate the same and apply the proceeds to satisfy its claim. It did not have full ownership rights to the exclusion of any rights of the debtors. I hold debtors can, in such a situation, recover the property if they can provide adequate protection to the creditor, and prove both that the assets are necessary to reorganization and that there is a reasonable possibility of a viable reorganization. However, in this case, I conclude debtors have not sustained this burden.

The total debt owed the bank is approximately $1,800,000 and is accruing interest at the rate of $650 per day. The security for this debt consists of the Day Resource plant facility in northern Idaho, IFSL assets, and certain real property in Boise which was conveyed to the bank as part of the August 1981 forbearance agreement.

The parties agree that one of the Boise real estate parcels is worth $70,000; they disagree as to the second parcel with Day Resource contending it is worth approximately $800,000 and the bank's appraiser placing its value at $620,100. In the present economic conditions, I find the bank's appraisal is the more accurate. The parties agree that the value of the rolling stock pledged by IFSL is approximately $78,000. There is, however, a wide disparity on the fair market value, for purposes of adequate protection, of the Day Resource wood pellet plant in northern Idaho and the improvements, equipment, and fuel stock thereon.

Debtors offered an appraisal setting the value of the plant and related collateral at $4,050,000. This appraisal stands opposed to two offered by the bank setting the value in the range of $400,000 to $800,000. The debtors' appraiser assumed that the plant has a going concern value, that among its assets is a valuable license to produce pellets, and that there is a market for its product. The evidence indicates that the assumptions are not realistic. The plant has not been able to enter production much less reach planned capacity, and there is no established or likely market. Debtors have abandoned hope of a viable pellet manufacturing operation. The plan of reorganization being explored by Day Resource anticipates closing the pellet plant in hope of turning the facility into an electrical energy co-generating plant. This plan would require new capital on the amount of $3,000,000, the availability of which is highly speculative. One of the bank's appraisers fixed the value of the facility at $400,000 which is the same value represented to the local tax assessors by Jason Day.

I thus conclude that, for the purposes of determining whether adequate protection of the bank's interest has been offered and the related issues surrounding lift of stay, the value of the plant and related property is not over $600,000. The situation thus established indicates that the bank's claim of $1,800,000 is secured by assets which do not exceed $1,500,000, assuming the real estate heretofore conveyed to the bank is considered security for the indebtedness together with the leasehold interest of IFSL. Thus, there is no existing "equity cushion" which may be applied to protect the bank's interest. No offer to substitute collateral or to pledge additional collateral has been made. The $8,000 periodic payments offered as part of adequate protection would not pay accruing interest and the viability of any proposed plan of reorganization is highly speculative. I thus conclude that Day Resource and IFSL are incapable of providing adequate protection to the bank which would sustain a return of the collateral.

Furthermore, in regard to the actions brought by the bank seeking relief from the stay in order to complete the sale of the collateral and apply of the proceeds to its debt, I find that the bank is entitled to a vacation of the section 362 stay for these purposes.

This decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 752. Counsel for First Interstate Bank is requested to prepare a proposed judgment.