FRIENDLY, Circuit Judge:
 

 The question on this appeal is whether a debtor in possession under Chapter 11 of the Bankruptcy Code of 1978 is entitled to an order, under §§ 542 or 543 of the Code, requiring the Internal Revenue Service (IRS) to turn over tangible assets of the debtor on which the IRS had levied pursuant to § 6331
 
 et seq.
 
 of the Internal Revenue Code (IRC). This question has created much conflict among bankruptcy judges and district courts throughout the nation.
 
 [1]
 
 The only other court of appeals that has considered the issue has answered it in the negative,
 
 Cross Electric, Inc. v. United States,
 
 664 F.2d 1218 (4 Cir. 1981). The issue is of importance to the successful reorganization of debtors, on the one hand, and to the interest of the United States in the quick collection of tax revenues, on the other. We find the issue more difficult than did the Court of Appeals for the Fourth Circuit and, conceding the question to be a close one, reach an opposite result.
 

 Whiting Pools, Inc. (Whiting), the debtor, was in the business of selling, installing and servicing swimming pool equipment and supplies. On January 14, 1981, the IRS, acting pursuant to IRC § 6331, seized all of Whiting’s tangible property, including equipment, vehicles, inventory, office equipment and supplies, at its place of business in the Western District of New York. The estimated worth of the seized property in the hands of Whiting as a going concern was $162,876. The lien of the IRS was for some $92,000, plus interest, in unpaid withholding and Federal Insurance Contributions Act taxes. Testimony taken before
 
 *146
 
 the bankruptcy judge indicated that sale of the property by the IRS would net a maximum of $30,000 to $35,000, with a more probable recovery in the neighborhood of $20,000.
 

 On the day following the IRS levy Whiting filed a petition under Chapter 11 of the Bankruptcy Code and was continued as a debtor in possession, § 1101(1). A month later the United States initiated an adversary proceeding under § 362(d) .of the Code in which it sought a determination that the automatic stay provisions of § 362 were inapplicable to it or, in the alternative, for relief from the stay to permit it to sell the property. It alleged that storing the property was costing. $2,500 per month. Whiting’s answer contained a counterclaim asking that the IRS be required to turn over the property pursuant to § 542 of the Bankruptcy Code.
 

 Bankruptcy Judge Hayes, after holding hearings, delivered an opinion, 10 B.R. 755 (Bkrtcy.W.D.N.Y.1981), in which he concluded that the automatic stay provided in § 362 was applicable to the IRS — a conclusion which is not disputed here. Examining § 362(d), which directs the bankruptcy court to grant relief from such a stay under certain circumstances,
 
 [2]
 
 the judge found that such relief could not be granted under § 362(d)(2) since the debtor had an equity in the property and the property was “absolutely necessary to an effective reorganization of the debtor.”
 
 Id.
 
 at 757. Turning back to § 362(d)(1), the judge concluded that while the best interests of the United States would be served by a reorganization, for which he thought there was a reasonable chance, and the Government could be adequately protected while the reorganization proceeding was pending, it made “little sense to continue the stay unless a turnover of property”,
 
 id.,
 
 could lawfully be directed. He thus reached what both parties concede to be the crucial issue, namely, whether it could be.
 

 We set forth in the margin the sections of the Bankruptcy Code which must be construed in deciding that question.
 
 [3]
 
 Although Whiting had sought a turnover under
 
 *147
 
 § 542, the bankruptcy judge was precluded from granting relief under that section by the decision of District Judge Elfvin in the Western District of New York in
 
 In re Avery Health Center, Inc.,
 
 8 B.R. 1016 (D.C.W.D.N.Y.1981), with which he seemingly disagreed. Believing that the turnover powers formerly provided in proceedings under Chapter X of the Bankruptcy Act by the last sentence of § 257,
 
 [4]
 
 see
 
 Reconstruction Finance Corp. v. Kaplan,
 
 185 F.2d 791, 795 (1 Cir. 1950), must have gone somewhere, he found them in § 543(b), reading the definition of “custodian” in § 101(10), more particularly the reference to an “agent”, as including the IRS, 10 B.R. at 759. After noting the anomaly that § 543 seems to permit a turnover without providing for the protection that would be required by reading §§ 363(e) and 542 together, he directed the turnover on the conditions set forth in the margin.
 
 [5]
 

 The district court, 15 B.R. 270, reversed. It adhered to its previous decision in
 
 In re
 
 
 *148
 

 Avery Health Center, Inc., supra,
 
 concerning § 542, and rejected the bankruptcy judge’s theory that the IRS was an “agent” under § 101(10)(C) and thus a “custodian” under § 543. It considered that “the concept of agency entails a fiduciary relationship arising out of an express or implied contract between the principal and the agent,” and that the IRS, when making a levy under IRC § 6331, did not fill such a role. The court remanded the case to the bankruptcy court to determine whether the stay of the IRS’s proposed sale should be lifted. Whiting appealed to this court, and the bankruptcy court declined to take action upon the remand pending our decision.
 

 I.
 
 Section 54S
 

 The definition of “custodian” in § 101(10) finds an antecedent in § 2(a)(21) of the former Bankruptcy Act, which required, under certain circumstances, delivery of property by “receivers or trustees appointed in proceedings not under this Act, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person’s property.” The definition of custodian in § 101(10) appears in H.R. 8200, 95th Cong., 1st Sess., as reported by the House Committee on the Judiciary on September 8, 1977, H.R.Rep. No. 95-595, U.S. Code Cong. & Admin.News 1978, p. 5787, with a comment which we reproduce in the margin.
 
 [6]
 
 The same definition and comment can be found in S. 2266, 95th Cong.2d Sess. and in S.Rep.No. 95-989, p. 23, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5809. These shed little light on the meaning of the phrase “or agent under applicable law, or under a contract” etc.
 

 Since § 101(10)(A) and (B) include two of the categories described in § 2(a)(21) of the previous Act, § 101(10)(C) must have been intended to include and possibly broaden what had been covered by § 2(a)(21)’s phrase, “agents authorized to take possession of or to liquidate a person’s property”. Seemingly it embraces the case of an agent appointed or authorized by a debtor to take charge of property for the purpose of enforcing a lien of a particular creditor, but see,
 
 contra, In re Lewis,
 
 12 B.R. 106, 108-09 (Bkrtcy.M.D.Ga.1981), which may not have been true under § 2(a)(21) of the previous Act.
 
 Compare
 
 1 Collier on Bankruptcy ¶ 2.78, at 390.23 n.35 (14th ed.)
 
 with In re Rosenberg,
 
 128 F.2d 924 (7 Cir. 1942).
 

 Here there is no doubt that the IRS is “authorized to take charge of property of the debtor for the purpose of enforcing a lien against . .. property” of the debtor. However, the definition of “custodian” does not include anyone who is so authorized but only a person who acts as a trustee, receiver, or agent. Admittedly the IRS is not a trustee or receiver. No one would characterize it as the taxpayer’s agent as a matter of ordinary English speech. The Restatement of Agency 2d, § 1 (1958) defines agency as “the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.” See also Restatement of Agency 2d, § 1, Comment, at pp. 8-9 (1958). Seizure of property by the IRS under IRC § 6331 is not pursuant to a consensual relationship but is imposed by law irrespective of and generally contrary to the taxpayer’s desires. It is true that a person may be an agent under § 101(10)(C) when the relationship is created by law rather than by contract, but it would be a strained reading to interpret this as including the IRS, the archetypical “adverse claimant”, see
 
 Phelps v. United States,
 
 421 U.S. 330, 334, 95 S.Ct. 1728, 1731, 44 L.Ed.2d 201 (1975).
 
 [7]
 
 It is thus
 
 *149
 
 immaterial that the IRS has certain responsibilities, such as giving notice of seizure and sale and accounting for any surplus.
 

 Beyond this, in determining the meaning of “custodian” as used in § 543, it is necessary to consider the other provisions of the Code. One of these is § 543(c), which requires the bankruptcy court to provide a custodian with “reasonable compensation for services rendered and costs and expenses incurred.” We can think of no reason why Congress would have chosen to provide the IRS with reasonable compensation, as distinguished from reimbursement of expenses, see IRC § 6342(a)(1), for its efforts to dismember the debtor’s estate in its own interest. Moreover, as Bankruptcy Judge Hayes noted below, 10 B.R. at 760, § 542’s explicit reference to § 363, and thereby to the adequate protection requirements of § 361, suggests that § 542 is a “more appropriate section”, 10 B.R. at 760, than § 543 for resolving turnover disputes involving secured creditors.
 

 We therefore conclude that the district judge correctly decided that § 543 afforded no basis for a turnover order, and must consider whether he was also correct in his earlier ruling in
 
 In re Avery Health Center, Inc., supra,
 
 8 B.R. 1016, to which he adhered in this case, that no basis was furnished by § 542.
 

 II.
 
 Section 542
 
 — Turnover
 
 Generally
 

 Determination whether § 542 is here applicable requires consideration of several sections of the Code. Section 542 requires the turnover “of property that the trustee may use, sell or lease under section 363. . . . ” Section 363(c)(1) directs that in a Chapter 11 proceeding the trustee, without notice or a hearing, may use, sell or lease “property of the estate” in the ordinary course of business, but § 363(e) requires that “on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.” Section 541(a)(1) provides that, with exceptions not here relevant, an estate is comprised of “all legal or equitable interests of the debtor in property as of the commencement of the case.”
 

 The Government argues that the plain meaning of these sections mandates an answer in its favor. Relying on several decisions in the district and bankruptcy courts, see footnote 1,
 
 supra,
 
 the Government finds in § 541’s definition of “property of the .estate” a distinction between a debtor’s
 
 interests in property
 
 and
 
 property in which the debtor has an interest.
 
 The Government, Brief at 17, then advances the following general interpretation of the Code’s turnover provision: “the ‘property of the estate’ which must be delivered to the trustee ... by virtue of Section 542(a) consists only of any interests in property belonging to the debtor as of the time of its filing of a petition” in bankruptcy. The Government concludes that, at the commencement of the
 
 *150
 
 case, the debtor’s only interests in the property seized by the IRS were those explicitly set forth in § 6331
 
 et seq.
 
 of the IRC,
 
 [8]
 
 that therefore only these interests became part of the “property of the estate”, and that turnover of these interests would be inappropriate since the debtor cannot “use, sell, or lease” them. Brief at 7, 18-19. All other interests in the seized property, in particular the right to possession, are argued to be held by the IRS. The Government draws on several general statements in the Code’s legislative history to support its contention.
 
 [9]
 

 Although there is some force in the Government’s construction of §§ 542, 541 and 363, we ultimately must reject it. Justice Cardozo, interpreting one of the predecessors of the Code in
 
 Duparquet Huot & Moneuse Co. v. Evans,
 
 297 U.S. 216, 218, 56 S.Ct. 412, 413, 80 L.Ed. 591 (1936), said, “To fix the meaning of these provisions there is need to keep in view the background of their history. There is need to keep in view also the structure of the statute, and the relation, physical and logical, between its several parts.” The mechanical interpretation of § 541(a)(1) urged by the Government would require us to violate that admonition.
 
 [10]
 

 The Government’s general interpretation of the interplay of § 542 and § 541(a)(1)’s definition of “property of the estate” would have a far-reaching effect on reorganizations by denying to debtors or trustees in reorganization not only the power to obtain the turnover of property of the debtor levied upon by the IRS, but also that repossessed prior to bankruptcy by secured creditors or held by pledgees after a default. In all these instances the secured creditor would have rightful possession of the property. Typical statutes recognize the debtor as having only limited “rights” in the property — notice of sale, redemption prior to sale, and receipt of surplus proceeds, see pp. 157-158
 
 infra
 
 and note 8
 
 supra.
 
 Thus, under the Government’s reading of the statute, only these limited
 
 interests in property
 
 would constitute “property of the estate”. The trustee therefore could obtain turnover only of these interests, which he has without benefit of a turnover order, not the property itself.
 

 The results dictated by the Government’s interpretation of § 542 would be a significant departure from the treatment of reorganization proceedings under the former Bankruptcy Act. In Chapter X reorganization cases under that Act a bankruptcy court had broad power to order secured creditors in possession following the debt- or’s default to turn over their collateral. In the leading case of
 
 Reconstruction Finance Corporation v. Kaplan,
 
 185 F.2d 791 (1 Cir.
 
 *151
 
 1950), a pledgee seized the debtor’s plant, equipment and inventory following default on a loan, thereby precipitating the filing of a Chapter X reorganization petition later in the day. Following approval of the debtor’s reorganization plan, the bankruptcy court ordered the pledgee to turn over the repossessed property to the debtor’s trustee. The First Circuit, speaking through Chief Judge Magruder, upheld the order, on the ground that such authority was necessary if Chapter X reorganizations were to have a realistic possibility for success:
 

 In contrast with the provisions of law relating to straight bankruptcy, Chapter X, like its earlier counterpart § 77B, . . . contemplates the rehabilitation of financially ailing business corporations under plans of reorganization which may deal with claims of creditors, secured as well as unsecured, and embrace all of the debtor’s property, however encumbered with outstanding security interests. In keeping with this objective, appropriate broad powers are conferred upon the reorganization court.
 

 185 F.2d at 794.
 

 The court also wrote that:
 

 The second sentence of § 257 may not specifically authorize a turnover order displacing the ordinary possessory lien of a pledgee of collateral or other personal property; but it seems in substance to cover the kind of security interest which RFC had in the inventory under its statutory factor’s lien. In other words, RFC’s lien on the inventory had the characteristic of a chattel mortgage, with possession, and the right to possession, remaining in the borrower until default.
 
 But there is no need to rest on the second sentence of § 257, which is not the broad basic section conferring upon the court jurisdiction over ail the debtor’s property wherever located;
 
 it appears rather to be a specific provision inserted out of abundance of caution to make clear the inapplicability under Chapter X of
 
 Tuttle v. Harris,
 
 1936, 297 U.S. 225, 56 S.Ct. 416, 80 L.Ed. 654, a case decided under § 77B. (Emphasis added.)
 

 Id.
 
 at 795.
 
 [11]
 

 The First Circuit’s conclusion in
 
 RFC v. Kaplan, supra,
 
 was also reached in a number of other cases, some preceding and others following it. See
 
 Grand Boulevard Investment Co. v. Strauss,
 
 78 F.2d 180 (8 Cir. 1935) (under § 77B);
 
 In re Prudence-Bonds Corp.,
 
 77 F.2d 328 (2 Cir.) (under § 77B),
 
 cert. denied,
 
 296 U.S. 584, 56 S.Ct. 95, 80 L.Ed. 413 (1935);
 
 John Hancock Mutual Life Insurance Co. v. Casey,
 
 134 F.2d 162 (1 Cir.) (per curiam),
 
 cert. denied,
 
 319 U.S. 757, 63 S.Ct. 1176, 87 L.Ed. 1709 (1943);
 
 In re Franklin Garden Apartments, Inc.,
 
 124 F.2d 451 (2 Cir. 1941);
 
 In re Third Avenue Transit Co.,
 
 198 F.2d 703, 706 (2 Cir. 1952) (affirming bankruptcy court’s authority to order turnover, but refusing to exercise discretion to do so). See also 6A Collier ¶ 14.03, at 741 (14th ed. 1977). The validity of Chief Judge Magruder’s observation that this power of the bankruptcy court to order the turnover of property in the lawful possession of secured creditors did not depend solely on § 257 is demonstrated by the fact that two of these decisions were rendered under § 77B, the predecessor of Chapter X which included § 257. A principal basis of these decisions was that the reorganization statutes, § 77B(a), § 111 (Chapter X) and § 411 (Chapter XII), unlike the provisions applying in ordinary bankruptcy, but like § 77(a), see
 
 Continental Illinois National Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co.,
 
 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935), gave the bankruptcy court jurisdiction of all the property of the debtor,
 
 *152
 
 whether or not it was in the debtor’s possession.
 
 [12]
 

 The Government’s reading of § 541 would have the effect of reversing this settled law in reorganization proceedings under Chapter 11 of the Code. We see no evidence that any such drastic change was intended. As Justice Douglas put it, in interpreting the old Bankruptcy Act in
 
 Emil v. Hanley,
 
 318 U.S. 515, 521, 63 S.Ct. 687, 690, 87 L.Ed. 954 (1943), “We cannot help but think that if Congress had set out to make such a major change, some clear and unambiguous indication of that purpose would appear.” We find no such indication in the new Code or its legislative history. And, like Justice Douglas, we do not believe that nearly fifty years of the law of reorganization under the Bankruptcy Act would have been changed without some clear statement to that effect. This is particular-Iy true because the Government’s reading of the Bankruptcy Code would seriously affect the chances of success in many reorganizations: “It is . . . generally vital to the success of a reorganization that all the debtor’s property be included, that the continuation of the debtor’s business be not unduly hampered by dissipation of the property to particular creditors . . .. ” 6 Collier on Bankruptcy ¶ 3.05, at 431 (14th ed. 1977). In light of legislative history indicating that reorganizations were to be encouraged under the new Code, we doubt that Congress intended such a result.
 
 [13]
 

 Indeed an examination of the legislative history antedating 1977 compels a broad view of § 542’s turnover power. Section 542 was a relatively late addition to the Code. It did not appear in the early drafts of the proposed legislation,
 
 [14]
 
 and was first
 
 *153
 
 included in H.R. 6, which was introduced on Jan. 4, 1977.
 

 H.R. 6 was the product of the House Judiciary Committee, which prepared the bill after the Subcommittee on Civil and Constitutional Rights had conducted extensive hearings on earlier drafts.
 
 [15]
 
 H.R. 6 was prepared with the intent of resolving problems that had been identified during these hearings. 124 Cong.Rec. H 11690, 11701; Klee,
 
 Legislative History of the New Bankruptcy Code,
 
 54 Am.Bankr.L.J. 275, 280 (1980). Since § 542 first appeared in H.R. 6, it is important to consider what was said at those hearings regarding the turnover of collateral from secured creditors in possession.
 

 The House and Senate subcommittee hearings contain a number of statements regarding the bankruptcy court’s turnover power. The following pattern emerges from the testimony: Witnesses said it was clear that the bankruptcy courts were intended to have (and should have) the authority to order the turnover of collateral from secured creditors in possession. Concern was expressed, however, that the language of early drafts of the proposed legislation failed to set forth the basis for such a turnover power in sufficiently explicit detail; consequently, redrafting of the legislation on this point was urged. Witnesses also suggested that turnover be preceded by the provision of adequate protection for secured creditor’s interests. We are not aware that any witness opposed a broad turnover power if this was accompanied by proper provisions for protection.
 

 The following excerpts from the congressional hearings illustrate the above summary. One witness told the House subcommittee:
 

 I believe that it is almost beyond argument that in the new bankruptcy legislation collateral in the possession of secured creditors should be subject to the jurisdiction of the bankruptcy court, except, perhaps, where the bankruptcy is directed toward liquidation and the property has already been taken into custody by another court of competent jurisdiction. . . .
 

 In rehabilitative proceedings it is proper for the court to be able to control under the injunctive power liquidation procedures by secured creditors in possession
 
 and under adequate safeguards to compel the surrender of collateral for use in the rehabilitation process. While recognizing the wish of this Committee that witnesses not comment on the specific language of the proposed legislation at this time I note that the power of the court to compel the surrender of collateral has been left largely to inference in both of the Bills presently before Congress. Leaving this issue to case by case development is, in my opinion, undesirable in light of the present judicial uncertainty on the point and I believe that the legislation should expressly deal with the question of when and under what standards displacement of the secured creditor or its agent should be permitted.
 

 Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, Bankruptcy Act Revision, 94th Cong., 1st Sess., Hearings on H.R. 31 and 32, Part I, at 439 (1976) [hereinafter House Hearings] (prepared statement of Patrick A.
 
 *154
 
 Murphy, Esq.) (emphasis added). See also id. at 489-93.
 

 Another witness, testifying on behalf of the American Bankers Association, said:
 

 A related change in both bills would extend the jurisdiction of the Bankruptcy Court to secured creditors in possession of property of the bankrupt, which would, with appropriate safeguards, permit the Bankruptcy Court to force the secured creditor to surrender that property to the debtor or trustee even in a straight bankruptcy case. Assuming that adequate safeguards of the rights of secured creditors are contained in the legislation, we would support this change recognizing that it is a power that is present in reorganization cases under existing law [citing §§ 256 and 257 of Ch. X and §§ 506 and 507 of Ch. XII and
 
 RFC v. Kaplan.].
 
 It should be made clear by statute, however, that the Bankruptcy Court would have no power to administer any secured creditor’s collateral unless (1) there is an equity for the benefit of creditors or unless such administration is necessary to effect a rehabilitation under Chapter VI or VII of the Commission’s Bill or Chapters VI, VII, or VIII of the Judge’s Bill, and (2) it is clear that the value of the secured creditor’s claim against the collateral will be preserved.
 

 Id.
 
 at 1023 (prepared statement of Walter W. Vaughn).
 

 The National Bankruptcy Conference expressed the same view of the matter:
 

 However, the NBC [National Bankruptcy Conference] noted that there is no provision either in the reorganization chapter or elsewhere comparable to existing Section 257 of Chapter X. This section authorizes the Court to require a mortgagee or other secured creditor to turn over to a trustee property in his possession. In view of the expanded jurisdiction of the Bankruptcy Court under the proposed bills, it is also clear that this power should continue in the Court and the NBC concluded that it should be extended to liquidation cases.
 

 The following principles are therefore recommended: (1) The right to gain possession from a secured creditor should exist in both liquidation and reorganization cases. (2) Some standard or guidelines, even if only of a general nature should be established as to the occasions when such rights should be exercised. (3) The standards or guidelines in liquidation cases should be those contained in Section 5-203 and in reorganization cases those in Section 7 -203 [the forerunner of the current adequate protection section].
 

 Id.
 
 at 1838-39.
 
 [16]
 
 See also
 
 id.
 
 at 1756-57 (prepared statement of Robert J. Grimmig,
 
 *155
 
 Vice-President, Chemical Bank); Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, The Bankruptcy Reform Act, Hearings on S. 235 and S. 236, Part I, at 125 (statement of Walter Vaughn) and 464 (statement of Robert Grimmig) (1976).
 

 Commentary on the proposed bankruptcy legislation reflected the same understanding. One article, Murphy,
 
 Use of Collateral in Business Rehabilitation: A Suggested Redrafting of Section 7-208 of the Bankruptcy Reform Act,
 
 63 Calif.L.Rev. 1483 (1975), said:
 

 Two questions are presented: (1) does the court have the power to stay the secured creditor from commencing or continuing a foreclosure action; and (2) does the court have the power to order a secured creditor in possession to surrender the property for use in the rehabilitative process? Section 7-203 of the Proposed Act contemplates the use of collateral but fails to deal with the initial question of obtaining the property from a secured creditor in possession. Section 2-201 of the Proposed Act is clearly intended to extend the jurisdiction of the court to property of the estate wherever located and, when read with section 4-501, would permit the court to
 
 stay
 
 a secured creditor in possession even in straight bankruptcy proceeding — clearly a change from existing law. However, neither the Proposed Act nor the Judge’s Bill deals expressly with the
 
 recovery
 
 of property from secured creditors in possession.
 

 Id.
 
 at 1497 (footnotes omitted). The article continued:
 

 Expanded jurisdiction under section 2-201, in combination with the broad definition of “property of the estate” under section 4-601, indicates that the Commission intended to give the court power to deal with collateral in the possession of secured creditors. This should be clarified, however, in the general part of the legislation, Chapter IV of the Proposed Act, rather than in Chapter VII, in order for the court to have comprehensive power in liquidation proceedings and in the rehabilitative chapters.
 

 Id.
 
 at 1497-98. See also Coogan,
 
 Comments on Some Reorganization Provisions of the Pending Bankruptcy Bills,
 
 30 Bus.Law. 1149, 1169-78 (1975); Murphy,
 
 Restraint and Reimbursement: The Secured Creditor in Reorganization and Arrangement Proceedings,
 
 30 Bus.Law 15 (1974).
 

 Shortly after the uncontradicted statements regarding the bankruptcy court’s turnover power, cited above, were made to the House and Senate subcommittees, § 542, the Code’s general turnover provision, was added to the proposed legislation. Following this addition, the provision was incorporated in all later drafts of the bill, and the turnover question, which had attracted substantial attention in the 1975 and 1976 hearings, was not mentioned in subsequent legislative history. This sequence of events compels the inference that § 542 was added to the Code to make clear — as a number of witnesses had explicitly urged — that the turnover power approved in
 
 RFC v. Kaplan
 
 was to be incorporated in the new statute. This inference becomes all the more compelling when one considers that if § 542 did not authorize compelling turnovers by secured creditors in possession, apparently its only use would be to authorize obtaining property from persons in wrongful possession following theft or conversion. Given the circumstances surrounding the inclusion of the section in the Code, the more natural reading of § 542 is that it was intended to codify
 
 RFC v. Kaplan,
 
 and possibly, although we need not decide the question, also extend the turnover power to straight bankruptcy cases.
 

 For the foregoing reasons, we reject the Government’s reading of §§ 542, 541 and 363 in the present context of a Chapter 11 proceeding, and hold that in such a case
 
 *156
 
 the bankruptcy court generally has power under § 542 to order the turnover of property repossessed or executed upon by a secured creditor or held by a pledgee following the debtor’s default and prior to his bankruptcy, if the property has not yet been sold. We thus pass on to the Government’s further argument that, even if the bankruptcy court can compel a turnover by a repossessing or executing lender under § 542 in a Chapter 11 proceeding, this cannot be done in the case of property upon which the IRS has levied.
 

 III.
 
 Federal Tax Levies
 

 On the basis of a mere reading of the IRC provisions, the argument is unpersuasive. Comparison of relevant statutes indicates that an IRS levy on tangible property pursuant to § 6331
 
 et seq.
 
 is virtually indistinguishable from the ordinary repossession and foreclosure procedures followed by secured creditors, except for the fact that the IRS can make its own levy without need of the assistance of a sheriff, marshal or similar officer. Compare § 6331
 
 et seq.
 
 of the IRC with §§ 9-207, 9-501 to 507 of the UCC and with N.Y.Lien Law §§ 200-05 (public sales), N.Y.Lien Law §§ 206-210 (levy) and with §§ 1301
 
 et seq.
 
 of the New York Real Property Actions and Proceedings Law. In these instances as under IRC § 6331
 
 et seq.,
 
 the statutes give the debtor the right, and only the right, to notice, an opportunity for redemption, and surplus proceeds.
 

 The Government’s argument for a sharp distinction between an IRS levy and a secured creditor’s repossession is based primarily on
 
 Phelps v. United States,
 
 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975). In
 
 Phelps,
 
 a taxpayer had transferred its assets to an assignee for the benefit of creditors, who had converted them into some $38,000 in cash. The Government filed a notice of tax lien in the amount of $140,831.59 and levied upon the $38,000 in the assignee’s hands. An involuntary petition in bankruptcy was then filed against the taxpayer, and a receiver in bankruptcy petitioned the bankruptcy court to require the assignee to turn over the proceeds. The Seventh Circuit ruled against the receiver, 495 F.2d 1283 (1974), on the ground that the assignee was holding for the benefit of the United States as an adverse claimant, thereby implicating the rule that in ordinary bankruptcy such a holder is not subject to summary jurisdiction. It disagreed with the Ninth Circuit’s decision in
 
 In re General Wood Products Corp.,
 
 483 F.2d 975 (1973), that an assignee’s disclaimer of interest brought similarly seized property within the summary jurisdiction of the bankruptcy court under language in
 
 Taubel-Scott-Kitzmiller Co. v. Fox,
 
 264 U.S. 426, 432-33, 44 S.Ct. 396, 398-99, 68 L.Ed. 670 (1924), and that the possession of the bankrupt necessary to support exercise of summary jurisdiction in ordinary bankruptcy existed “where the property is held by some other person who makes no claim to it.” The Supreme Court granted certiorari to resolve the conflict.
 

 The Supreme Court agreed with the Seventh Circuit. It reasoned that, following the levy, the assignee held the $38,000 on behalf of the United States as an adverse claimant. The Court then applied the settled rule that “where possession is assertedly held not for the bankrupt, but for others prior to bankruptcy ... the holder is not subject to summary jurisdiction.”
 
 Phelps, supra,
 
 421 U.S. at 335-36, 95 S.Ct. at 1731-32 (quoting 2 Collier on Bankruptcy ¶23.-06[3], at 506.2-506.3 (14th ed. 1975)). The receiver’s case was not aided by § 2(a)(21) of the Bankruptcy Act which authorized bankruptcy courts to require turnovers by assignees for the benefit of creditors since, as a result of the levy, the assignee was holding not for creditors generally but as a custodian for the United States.
 

 It is plain that the
 
 holding
 
 in
 
 Phelps
 
 does not assist the Government here.
 
 Phelps
 
 was one in the line of cases applying the distinction between summary and plenary jurisdiction that had evolved under the 1898 Act with respect to ordinary bankruptcy, see
 
 Taubel-Scott-Kitzmiller Co. v. Fox, supra,
 
 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 670, where decision hinged on whether or not the trustee had actual or constructive pos
 
 *157
 
 session of the debtor’s property. Under the Code this distinction no longer exists, as the legislative history makes clear, see, e.g., Senate Report No. 95-989 (1978) at 153,
 
 reprinted in,
 
 [1978] U.S.Code Cong. & Ad. News 5939; House Report No. 95-595 (1978) at 445,
 
 reprinted in,
 
 [1978] U.S.Code Cong. & Ad.News 6400. Instead, Congress adopted a broad jurisdictional provision which states, in language modeled on § 111 of Chapter X of the former Act, “The bankruptcy court .. . shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of [the] case.” 28 U.S.C. § 1471(e). Hence it is far from clear that under the Code a bankruptcy court would not have
 
 power
 
 to order a turnover on the same facts as in
 
 Phelps.
 

 [17]
 

 Moreover
 
 Phelps
 
 did not decide that a bankruptcy court would not have had power in a Chapter X proceeding under the former Act to direct a turnover on facts such as there presented. As we have previously developed, the constraints against a bankruptcy court’s exercising summary jurisdiction with respect to property of the bankrupt not in the debtor’s actual or constructive possession had never applied under the reorganization provisions, §§ 77 and 77B, and Chapters X and XII. Rather, “the reorganization court [could] bring its authority to bear upon creditors in situations not possible in ordinary bankruptcy.” 6 Collier on Bankruptcy ¶ 3.03, at 412 (14th ed. 1977). In such cases
 

 when possession of the debtor’s property is held by a creditor, such as a pledgee or mortgagee, whose claim is not in dispute and who does not dispute the debtor’s title but claims the right to hold the property and use it as security, the courts have generally ruled that this possession is not sufficient to defeat the reorganization court’s summary jurisdiction either to enjoin the use of the security as by sale or to retake possession thereof.
 

 6 Collier on Bankruptcy ¶ 3.05, at 431 (14th ed. 1977). See
 
 Reconstruction Finance Corporation v. Kaplan, supra,
 
 and cases cited at pp. 151-152,
 
 supra.
 
 As shown above the framers of the Code intended to preserve this jurisdiction.
 

 The Government is thus forced to argue that after an IRS levy, as distinguished from levies by other secured creditors, a debtor loses not only possession but ownership. This position finds scant support in the language of IRC § 6331 ei
 
 seq.
 
 Looking only at the statute, we would see no basis for doubt that at the commencement of the Chapter 11 proceeding Whiting had title to the goods the IRS had seized. Under the statute ownership is extinguished not by the levy and seizure but only by a subsequent sale. Thus, § 6335(a) requires that written notice of seizure be given “to the owner of the property (or, in the case of personal property, the possessor thereof)” or be left at his usual place of abode or business. Section 6335(b) requires that, as soon as practicable after the seizure, notice of sale be given to “the owner”. Section 6336, relating to perishable goods, again requires notice to the “owner of the property”. The IRS’s certificate of sale of personal property shall “transfer to the purchaser all right, title, and interest of the party delinquent in and to the property sold”, § 6339(a)(2), and its deed of real property “shall be considered and operate as a conveyance of the right, title and interest the party delinquent had in and to the real property thus sold at the time the lien of the United States attached thereto.” § 6339(b)(2). By the very language of the statute, it is the delinquent party’s interest, not an interest already acquired by the Government as a result of the levy, that is conveyed. Nothing in these sections prohibits the delinquent party, after the levy and pending the sale, from exercising the most fundamental right of ownership, namely, to transfer title, subject, of course, to the continuing right of the United States to proceed with the sale unless the property has been redeemed under § 6337(a). Such a transfer could well occur when the tax
 
 *158
 
 payer’s equity was substantial. It thus is not surprising that in
 
 Bennett v. Hunter,
 
 76 U.S. (9 Wall.) 326, 336-37, 19 L.Ed. 672 (1870), addressing itself to a statutory scheme essentially the same as IRC § 6331
 
 et seq.,
 
 the Court had said:
 

 What preceded the sale was merely preliminary, and, independently of the sale, worked no divestiture of title.
 

 The title was “forfeited” by the levy only in the sense that “it became subject to be vested in the United States, and upon public sale, became actually vested in the United States or in any other purchaser, but not before such public sale.”
 

 In the face of all this the Government relies on two statements in the
 
 Phelps
 
 opinion. One, 421 U.S. at 337, 95 S.Ct. at 1732, is that “The levy, therefore, gave the United States full legal right to the $38,000 levied upon as against the claim of the petitioner receiver”. The statement that the United States had “full legal right” to the $38,000 levied upon for a much larger tax liability is not equivalent to saying that where, as here, the debtor has an equity in the property, that also passes to the Government. Any such statement — and, we repeat, none was made — not only would have been unnecessary to the decision but would have run directly counter to
 
 Bennett v. Hunter, supra,
 
 which was not called to the Court’s attention either in the briefs or in oral argument and was not cited by it.
 

 The other statement in
 
 Phelps
 
 on which the Government relies is in footnote 8, 421 U.S. at 337, 95 S.Ct. at 1732. The footnote dealt with an argument by the receiver based on § 70(a)(8), which vested a trustee in bankruptcy “with the title of the bankrupt as of the date of the filing of the petition ... to ... property held by an assignee for the benefit of creditors.” The Court’s first answer was the receiver’s admission that at the date of the filing of the petition, the bankrupt had no title to property it had previously conveyed to the as-signee. The footnote then added:
 

 In any event, the pre-bankruptcy levy displaced any title of Chicagoland [the taxpayer], and § 70(a)(8) is therefore inapplicable.
 

 The footnote cited no authority for the proposition that the levy as distinguished from the sale “displaced” the title of Chica-goland, which the receiver had conceded to be nonexistent because of the prior conveyance to the assignee, and any such view, if applied generally, would run directly counter to
 
 Bennett v. Hunter, supra.
 
 The remark just quoted must be read as addressed to the particular circumstances of the
 
 Phelps
 
 case, where the tax claim vastly exceeded the amount of the levy and the seizure was of cash which did not need to be sold. See
 
 United States v. Pittman,
 
 449 F.2d 623, 627 (7 Cir. 1971).
 
 [18]
 

 Eiland
 
 involved the levy upon an intangible indebtedness rather than upon corporeal property as here and we would hesitate to extend its holding. Such a step is not necessary to the decision of this case.
 

 
 *159
 
 In deciding this case it is appropriate for us to look, as the Supreme Court would equally be obliged to look, not only to the two statements in
 
 Phelps
 
 but to the legislative history of the Bankruptcy Code. Both the House and the Senate Reports, H.R. Rep.No.95-595, 95th Cong. 1st Sess. at 367 (1977); S.Rep.No.95-989, 95th Cong.2d Sess. at 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323, said that § 541(a) included
 

 property recovered by the trustee under section 542 of proposed title 11, if the property received was merely out of the possession of the debtor, yet remained property of the debtor,
 

 and that
 

 The debtor’s interest in property also included “title” to property, which is an interest, just as are a possessory interest, or a leasehold interest, for example.
 

 Despite the Government’s assertions to the contrary, our conclusion that an IRS levy on tangible property in which the debtor has an equity does not strip the debtor of all property interests and transfer full title to the Government is entirely consistent with the statements in the House and Senate Reports, H.R.Rep.No.95-595,
 
 supra,
 
 at 367-68; Sen.Rep.No.95-989,
 
 supra,
 
 at 82, U.S. Code Cong. & Admin.News pp. 5787, 5868, 6323, see also 124 Cong.Rec. H 11096 (daily ed. Sept. 28, 1978), that the Code was “not intended to expand the debtor’s rights against others more than they exist at the commencement of the case” and that the trustee “could take no greater rights than the debtor himself had.” Whiting has not asked us to invalidate the tax lien. It has asked only to have the use of the property, on which the IRS had levied but which it had not yet sold, in what Whiting believed and the bankruptcy judge found might be a successful rehabilitation, to the advantage of the Government as well as other interested parties. Here we must give some weight to the purpose of the Code, announced by Representative Edwards, a member of the Commission on the Bankruptcy Laws of the United States, who presented the bill to the House, 124 Cong.Rec. H 11089 (daily ed. Sept. 28, 1978):
 

 The amendment also encourages business reorganizations by a streamlined new commercial reorganization chapter. . .. It will protect the investing public, protect jobs, and help save troubled businesses.
 

 There can be no doubt that allowing the government to strip a failing company of all its tangible property would impact seriously on this goal.
 
 [19]
 

 We recognize that, as said in
 
 Bull v. United States,
 
 295 U.S. 247, 259-60, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935), “taxes are the life-blood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection. The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor’s property to satisfy the debt.” Such considerations are of peculiar force when, as here, a debtor has simply helped itself to amounts withheld from employees. The framers of the Code sought to reconcile the possibly conflicting goals of enhancing the prospects for rehabilitation and protecting the revenue by the provision in § 363(e) for adequate protection of the subject of a turnover order to which we have already referred,
 
 supra,
 
 note 3. The nature of what § 363(e) means by “adequate protection” is spelled out in § 361, quoted at note 3,
 
 supra.
 
 If a plan of reorganization is ultimately effectuated, the United States, as holder of a perfected lien, would be entitled to the protections afforded by § 1129(b)(2)(A); it could not be treated, over its objection, simply as an unsecured priority creditor. However, a successful reorganization is by no means assured; there have been all too many instances where creditors, even se
 
 *160
 
 cured creditors, have seen their interests whittled away while the debtor and its counsel endlessly pursue some will of the wisp after all real hope has faded. A bankruptcy judge acting on a request like that made here should therefore give serious consideration to forms of protection other than that ultimately obtainable in a reorganization plan.
 
 [20]
 

 Here the bankruptcy judge purported to do just that, see note 5,
 
 supra,
 
 and we would have little doubt that the conditions he developed would be sufficient except for one point not apparent on the face of his opinion. The opinion of the district court reveals that, in addition to the turnover order of April 28, 1981, here before us, the bankruptcy judge made an order on April 30, 1981, directing Bankers Trust Company to pay certain levied funds to the IRS and further directing that such funds
 
 [21]
 
 be considered as partial payment of the $20,000 which Whiting was required to pay the IRS under the order here under review. The district judge vacated the April 30 order and directed the bankruptcy court to reconsider it. We are not clear what the effect of this was. There is nothing to indicate whether Whiting had appealed from the April 30 order, and the direction that the Bankers Trust funds be considered as partial payment of the $20,000 on the turnover of the tangibles would fade away if the April 28 order were vacated as the district court directed. The April 30 order is not before us and perhaps may never be. We also have no idea what has been happening in the year since the levy and the filing of the Chapter 11 petition. Under the circumstances we think it best simply to reverse the order of the district court insofar as it held that the tangible assets were not subject to a turnover order, and remand to it with instructions to vacate its own order to that effect and remand to the bankruptcy court for further proceedings consistent with this opinion. In such proceedings the bankruptcy court should consider whether a turnover order is appropriate under present circumstances and, if it decides in the affirmative, what protection should be afforded to the United States.
 

 It is so ordered.
 

 [1]
 

 . Decisions of bankruptcy and district courts denying the turnover power include:
 
 In re Avery Health Center, Inc.,
 
 8 B.R. 1016 (D.C.W.D.N.Y.1981);
 
 In re Paukner,
 
 10 B.R. 29 (Bkrtcy.N.D. Ohio 1981);
 
 In re Douglas,
 
 10 B.R. 283 (Bkrtcy.Neb.1981);
 
 In
 
 re
 
 Bishop & Son, Inc.,
 
 81-2 U.S.T.C. ¶ 9555 (Bankr.Ct.W.D.Mo.1981);
 
 In re Birco Mining Co.,
 
 10 B.R. 545 (Bkrtcy.N.D.Ala.1981);
 
 Parker GMC Truck Sales, Inc. v. United States,
 
 12 B.R. 667, 6 B.C.D. 899 (Bkrtcy.S.D.Ind.1980);
 
 In re Winfrey Structural Concrete Co.
 
 v.
 
 I. R. S.,
 
 5 B.R. 389, 6 B.C.D. 695 (Bkrtcy.D.Colo.1980); and
 
 Bush Gardens, Inc. v. United States,
 
 10 B.R. 506 (Bkrtcy.D.N.J.1979).
 

 Decisions of bankruptcy and district courts upholding the power include:
 
 In re Alpa Corp.,
 
 11 B.R. 281 (Bkrtcy.D.Utah 1981),
 
 appeal pending,
 
 (D.Utah);
 
 In re Bristol Convalescent Home, Inc.,
 
 12 B.R. 448, 7 B.C.D. 1151 (Bankr.Ct.D.Conn.1981);
 
 In re Aurora Cord & Cable Co.,
 
 2 B.R. 342 (Bkrtcy.N.D.Ill.1980),
 
 appeal pending,
 
 (N.D.Ill.);
 
 Troy Indus. Catering Service v. Michigan,
 
 2 B.R. 521 (Bkrtcy.E.D.Mich.1980) (state tax levy);
 
 In re Barsky,
 
 6 B.R. 624, 6 B.C.D. 1216 (Bkrtcy.E.D.Pa.1980).
 

 [2]
 

 . These are:
 

 § 362(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
 

 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
 

 (2) with respect to a stay of an act against property, if—
 

 (A) the debtor does not have an equity in such property; and
 

 (B) such property is not necessary to an effective reorganization.
 

 [3]
 

 . § 361. Adequate protection
 

 When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
 

 (1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity’s interest in such property;
 

 (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity’s interest in such property; or
 

 (3)granting such other relief, other than entitling such entity to compensation allowance under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity’s interest in such property. § 363(b) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.
 

 (c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.
 

 (2) The trustee may not use, sell, or lease cash collateral under paragraph* (1) of this subsection unless—
 

 (A) each entity that has an interest in such cash collateral consents; or
 

 (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.
 

 (3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing
 
 *147
 
 or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.
 

 (4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee’s possession, custody, or control.
 

 (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.
 

 § 541. Property of the estate
 

 (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:
 

 (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of this case.
 

 § 542(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee.may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
 

 § 543(b) A custodian shall—
 

 (1) deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian’s possession, custody, or control on the date that such custodian acquires knowledge of the commencement of this case; and
 

 (2) file an accounting of any property of the debtor, or proceeds of such property, that, at any time, came into the possession, custody, or control of such custodian.
 

 § 101(10) “custodian" means—
 

 (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
 

 (B) assignee under a general assignment for the benefit of the debtor’s creditors; or
 

 (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor’s creditors.
 

 [4]
 

 . Section 257 provided:
 

 The trustee appointed under this chapter, upon his qualification, or if a debtor is continued in possession, the debtor, shall become vested with the rights, if any, of such prior receiver or trustee in such property and with the right to the immediate possession thereof. The trustee or debtor in possession shall also have the right to immediate possession of all property of the debtor in the possession of a trustee under a trust deed or a mortgagee under a mortgage.
 

 [5]
 

 . 1. That the debtor-in-possession pay IRS as adequate protection under 11 U.S.C. § 361 the sum of $20,000 before the turnover occurs, and
 

 2. That the debtor shall pay to IRS the sum of $1,000 a month until the tax is paid, and
 

 3. That during this period of time IRS shall retain its lien upon the property seized, and
 

 4. That if the debtor fails to make the payments required when IRS turns over the property, the stay shall be lifted....
 

 [6]
 

 . Paragraph (10) defines “custodian.” There is no similar definition in current law. It is defined to facilitate drafting, and means prepet-ition liquidator of the debtor’s property, such as an assignee for the benefit of creditors, a receiver of the debtor’s property, or a liquidator or administrator of the debtor’s property. The definition of custodian to include a receiver or trustee is descriptive, and not meant to be limited to court officers with those titles. The definition is intended to include other officers of the court if their functions are substantially similar to those of a receiver or trustee.
 

 [7]
 

 . The bankruptcy judge and Whiting seek to draw support for the conclusion that the IRS is a “custodian” under § 543 from cases arising under Chapter X of the Bankruptcy Act, most
 
 *149
 
 notably
 
 RFC v. Kaplan,
 
 185 F.2d 791 (1 Cir. 1950) (Magruder, C. J.), which held that a creditor who had taken possession of a debtor’s goods after default could be required to turn over the goods to a trustee or a debtor in possession. Apart from the fact that the origin of the creditor’s possession lay in a consensual transaction, these cases, as is developed below, went not on the ground that the creditor was acting as the debtor’s agent but on the basis that § 111 of the Bankruptcy Act gave the reorganization court “exclusive jurisdiction of the debtor and its property wherever located”, differing in this respect from ordinary Dank-ruptcy in which the bankruptcy court had jurisdiction only over property in the bankrupt’s possession and the trustee was obliged to institute a plenary suit to recover other property. See
 
 In re Prudence-Bonds Corp.,
 
 77 F.2d 328 (2 Cir.),
 
 cert. denied,
 
 296 U.S. 584, 56 S.Ct. 95, 80 L.Ed. 413 (1935).
 

 Several bankruptcy courts have held that an ordinary secured creditor in possession is a “custodian” under the Code, and therefore subject to § 543’s turnover requirement,
 
 Smitty's Inc. v. Southeast National Bank,
 
 1 C.B.C.2d 366 (Bankr.Ct.M.D.Fla.1979) (writ of replevin);
 
 In re Gunder,
 
 8 B.R. 390, 394 (Bkrtcy.S.D.Ohio 1980) (repossession);
 
 In re Brickel,
 
 11 B.R. 353, 355 (Bkrtcy.D.Me.1981) (repossession);
 
 In re Williams,
 
 6 B.R. 789 (Bkrtcy.E.D.Mich.1980) (repossession). Apart from the fact that the ultimate source of the creditor’s right in these decisions was a consensual transaction, we find little analysis which assists us. We express no view on their correctness.
 

 [8]
 

 . According to the Government, these were: a right to notice of the seizure and the sale, § 6335(a) and (b); a right to redemption prior to the sale, § 6337(a), and, in the case of real property, for 120 days thereafter, § 6337(b); and a right to surplus proceeds, § 6342(b).
 

 [9]
 

 . For example, the Government directs our attention to the following remarks by Representative Edwards:
 

 [O]nly the debtor’s interest in such property becomes property of the estate. If the debtor holds bare legal title or holds property in trust for another, only those rights which the debtor would have otherwise had emanating from such interest pass to the estate under section 541.
 

 124 Cong.Rec. H 11,096 (Sept. 28, 1978),
 
 reprinted in
 
 [1978] U.S.Code Cong. & Ad.News 6455.
 

 [10]
 

 . Indeed, the immediate legislative history contains language inconsistent with the rigid reading of “property of the estate” urged by the Government. The House Report accompanying the Bankruptcy Code, after noting that the “scope of [§ 541(a)(1)] is broad”, states that property of the estate “includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act section 70a(6) and all other forms of property currently specified in section 70a of the Bankruptcy Act § 70a, as well as property recovered by the trustee under section 542 of proposed title 11, if the property recovered was merely out of the possession of the debtor, yet remained ‘property of the debtor’ ”. Report of the Committee on the Judiciary, House of Representatives, To Accompany H.R. 8200, H.R. Rep. No. 95-595, 95th Cong., 1st Sess., at 367, U.S.Code Cong. & Admin.News 1978, p. 5787 at 6323 (1977). This discussion indicates that § 541(a)(1) was not intended to narrow the old Act’s definition of “property of the estate”, as the Government’s reading of the statute would require, but rather to preserve or enlarge it.
 

 [11]
 

 . The fears of Congress with respect to
 
 Tuttle v. Harris,
 
 297 U.S. 225, 56 S.Ct. 416, 80 L.Ed. 654 (1936), may well have been exaggerated. The holding in that case simply echoed that in
 
 Duparquet, supra,
 
 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591, that appointment of a foreclosure receiver was not an event that would authorize the commencement of a 77B proceeding under § 77B(i). It did not deal with the power of the bankruptcy court to order a turnover by such a receiver when a 77B proceeding had been properly instituted.
 

 [12]
 

 .There was some uncertainty as to the scope of the bankruptcy court’s turnover power in Chapter XI proceedings under the former Act. According to one commentator:
 

 Probably the single greatest area of uncertainty with respect to the exercise of Chapter XI jurisdiction concerns the secured creditor in possession of property of the debtor. It is at present unclear whether the court has the power to prevent a secured creditor in possession from enforcing its lien and whether the court has the power to force that creditor to surrender property to the debtor.
 

 Murphy,
 
 Restraint and Reimbursement: The Secured Creditor in Reorganization and Arrangement Proceedings,
 
 30 Bus.Law. 15, 39 (1974). A number of recent decisions affirmed a turnover power in Chapter XI cases similar to that under Chapters X and XII, e.g.,
 
 In re George W. Schultz,
 
 50 Am.Bankr.L.J. 185 (Bankr.Ct.D.Okla.1975);
 
 In re Roebling Steel & Wire Corp.,
 
 1 B.C.D. 944 (Bankr.Ct.D.N.J.1975);
 
 In re American Kitchen Foods, Inc.,
 
 2 B.C.D. 715 (D.Me.1976). There was, however, authority for the proposition that, since arrangements of unsecured debts under Chapter XI, unlike proceedings under Chapters X and XII, see
 
 In re Colonial Realty Investment Co.,
 
 516 F.2d 154 (1 Cir. 1975), were not intended to alter the rights of secured creditors, a narrower turnover power was appropriate in Chapter XI, 8 Collier on Bankruptcy ¶ 3.02, at 156-63 (14th ed. 1977). A version of this latter view was accepted in
 
 In re Pittsburgh Penguins Partners,
 
 598 F.2d 1299 (3 Cir. 1979), where the court held that in a Chapter XI proceeding the IRS could not be compelled to turn over property on which it had levied prior to the filing of a petition in bankruptcy. This decision is of little guidance in the present reorganization proceeding, both because the Third Circuit was of the view that the bankruptcy court’s turnover power was extremely limited in Chapter XI cases, and because it thought that certain language in
 
 United States v. Phelps, supra,
 
 was dispositive of the case before it, a view we do not share, see pp. 156-157,
 
 infra.
 

 [13]
 

 . See the remarks of Representative Edwards quoted in text at p. 159,
 
 infra.
 
 According to Chairman Rodino, of the House Judiciary Committee, “[f]or business, the bill facilitates reorganizations, protecting investments, and jobs.” 123 Cong.Rec.H. 11,697 (daily ed. Oct. 27, 1977).
 

 [14]
 

 . By early we mean H.R. 10,792, introduced Oct. 4, 1973; S. 2565, introduced Oct. 11, 1973; H.R. 16,643, introduced Sept. 12, 1974; H.R. 31; H.R. 32; S. 235; and S. 236. See Klee,
 
 Legislative History of the New Bankruptcy Code,
 
 54 Am.Bankr.L.J. 275, 280 (1980).
 

 The provision that came the closest to creating a general turnover power was § 4-603, which was a “custodian” turnover section similar to what is now § 543:
 

 Sec. 4-603. EFFECT OF FILING OF PETITION ON PRIOR CUSTODIAN OF DEBTOR’S PROPERTY.—
 

 (a) APPLICABILITY OF SECTION. — If when a petition is filed under this title the property of the debtor is in the possession of—
 

 (1) a receiver, trustee, or other officer of a nonbankruptcy court, or
 

 (2) an assignee under a general assignment for the benefit of creditors, or
 

 (3) a trustee or agent under a statute or contract who is appointed or authorized to
 
 *153
 
 take charge of the property for the purpose of enforcing a lien against the property of the debtor or of a general administration of the debtor’s property for the benefit of creditors, the custodian’s rights and duties respecting the property shall be governed by this section.
 

 (b) DUTY OF CUSTODIAN TO DELIVER PROPERTY AND MAKE ACCOUNTING — A custodian of the debtor’s property to whom this section applies shall deliver the property in his possession to the trustee of the debt- or’s estate under this title and shall account to the administrator for the disposition of the property received as such custodian unless—
 

 (1) the prior custodian took possession of the property for the purpose of general administration of the debtor’s estate more than three months prior to the filing of a petition for relief under chapter V of this title;
 

 H.R. 31, § 4-603. H.R. 32, S. 235, and S. 236 all contained almost identical provisions.
 

 [15]
 

 . The House hearings involved some 100 witnesses, whose testimony fills some 2,800 pages plus appendices.
 

 [16]
 

 . The revision suggested by the National Bankruptcy Conference would have amended § 4-603 of H.R. 31 and 32 (quoted at note 14, supra) as follows:
 

 Section 4-603. Effect of Filing of Petition on Prior Custodian of Debtor’s Property
 
 and Creditor in Possession.
 

 (a) Applicability of Section. If when a petition is filed under this Act [the] property of the debtor is in the possession of:
 

 (1) a receiver, trustee, or other officer of a nonbankruptcy court, or
 

 (2) an assignee under a general assignment for the benefit of creditors, or
 

 (3) a trustee or agent under a statute or contract, who is appointed or authorized to take charge of the property for the purpose of enforcing a lien against the property cf the debtor or of a general administration of the debtor’s property for the benefit of creditors,
 
 or
 

 (4) a creditor,
 

 the custodian’s
 
 or creditor’s
 
 rights and duties respecting the property shall be governed by this section.
 

 (b) Duty of Custodian or
 
 Creditor
 
 to Deliver Property and Make Accounting. A custodian [of the debtor’s property] or
 
 creditor
 
 to whom this section applies [shall]
 
 may be directed by the court
 
 to deliver the property in his possession to the trustee of the debtor’s estate under this Act [and]
 
 for the purpose of sale under section 5-103 in a case under Chapter V, for the purpose of returning the property to the debtor subject to any relief from the stay prescribed by section 4-501 in a case under Chapter VI, or for the purposes of use pursuant to section 7-203 or disposition pursuant to section 7-104, 7-205, or 7-303(9) in a case under Chapter VII or ¡X.
 

 A Note prepared by the NBC to accompany the proposed change read:
 

 The proposed addition to the title of the Commission’s § 4-603 and the proposed addition of clause (4) to subsection (a) are designed to
 
 *155
 
 make clear that the section applies to a mortgagee or other creditor in possession of some or all of the property of the debtor as do §§ 257 and 507 of the present Act.
 
 In re Colonial Realty Investment Co.,
 
 516 F.2d 154 (1st Cir. 1975);
 
 In re Franklin Garden Apartments,
 
 124 F.2d 451 (2d Cir. 1941).
 

 [17]
 

 . We emphasize the word “power” since it is hard to see what proper purpose a turnover would have in straight bankruptcy on the facts of
 
 Phelps.
 

 [18]
 

 . The Government relies also on cases in the courts of appeals to support its thesis that a levy under § 6331 e£
 
 seq.
 
 strips the debtor of ownership despite the contrary implications of the statutory language and
 
 Bennett v. Hunter, supra.
 
 The general thrust of the decisions, as distinguished from some of the language, is to the contrary.
 
 In re Brewster-Raymond Co.,
 
 344 F.2d 903 (6 Cir. 1965), held that a debt owing to the bankrupt on which the Government had levied prior to adjudication but the proceeds of which had not been turned over to it remained part of the bankrupt estate so as to trigger § 57(j) which prohibited the collection of tax penalties that had been included in the levy.
 
 United States v. Sullivan,
 
 333 F.2d 100 (3 Cir. 1964) (in banc), although paraphrasing, at p. 116, the language in
 
 United States v. Eiland,
 
 223 F.2d 118, 121 (4 Cir. 1955), a case cited in
 
 Phelps,
 
 421 U.S. at 336, 95 S.Ct. at 1732, that a levy “effects a seizure of the delinquent’s property tantamount to a transferal of ownership”, held that the levy did not allow the Government to recover from insurance policy loans and automatic premium loans made after service of the notice of the levy.
 
 Eiland
 
 itself held only that in an ordinary bankruptcy a referee could not compel a debtor of the bankrupt on whose debt the United States had levied for a much larger tax to pay the debt to the trustee rather than the United States; the court suggested that a different result might obtain if the case involved tangible property, 223 F.2d at 123.
 
 United States v. Pittman, supra,
 
 449 F.2d 623, while presenting textual arguments that, in its view although not in ours, would support a conclusion that the levy itself transferred title to the Government and citing
 
 Eiland, supra,
 
 ended up by saying, at p. 627:
 

 [19]
 

 . For the impact of IRS levies upon businesses seeking to reorganize, see Nowak,
 
 Turnover Following Prepetition Levy of Distraint Under Bankruptcy Code § 542,
 
 55 Am.Bankruptcy L.J. 313, 313-14 (1981) (citing findings of Senate subcommittee investigation of IRS collection efforts).
 

 [20]
 

 . The judges must also vigilantly monitor the results of business operations and the progress of attempts at reorganization.
 

 [21]
 

 . The Government tells us, Brief at 5, fn. 3, that these amounted to nearly $15,000. It objects to the consideration of such funds, which it deems to be its own, as part of the down payment.