In the Matter of CHAMPION COAL CO., INC., Debtor.

In the Matter of RED LINE MINING CORPORATION, Debtor.

CHAMPION COAL CO., INC. and Red Line Mining Corporation, Plaintiffs,

v.

HIGHWAY EQUIPMENT COMPANY, Defendant.

RED LINE MINING CORPORATION, Plaintiff,

v.

ALPHA ENVIRONMENTAL MINING CORPORATION, Defendant.

ALPHA ENVIRONMENTAL MINING CORPORATION, Plaintiff,

v.

RED LINE MINING CORPORATION, Defendant.

HIGHWAY EQUIPMENT COMPANY, Plaintiff,

v.

RED LINE MINING CORPORATION, Defendant.

HIGHWAY EQUIPMENT COMPANY, Plaintiff,

v.

CHAMPION COAL CO., INC., Defendant.

Bankruptcy Nos. 82–1357, 82–1355. Adv. Nos. 82–824, 82–825, 82–901, 82–836 and 82–835.

United States Bankruptcy Court, W. D. Pennsylvania.

May 21, 1982.

Robert G. Sable, Pittsburgh, Pa., for debtor.

Philip E. Beard, Pittsburgh, Pa., for Highway Equipment.

Richard A. Pollard, Pittsburgh, Pa., for Alpha Environmental.

MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

PROCEDURAL HISTORY

Champion Coal Co., Inc. (hereinafter "Champion") filed its Petition for Reorganization under Chapter 11 on April 16, 1982 at 82–1357, and Red Line Mining Corporation

(hereinafter "Red Line") filed on April 16, 1982 at 82–1355. Both of the above corporations are strip miners wholly owned by a Blue Line Coal Company, Inc. These matters came on swiftly. Schedules were not filed until May 13, 1982.

On April 21, 1982 Debtors filed Complaints for Turnover at Adversary Nos. 82–824 and 82–825 alleging that on April 15, 1982, without warning, Highway Equipment Company (hereinafter "Highway") removed unique parts of its secured equipment which made them inoperable. Additionally, it is alleged that on April 16, Highway removed two pieces of equipment from the property.

Also, on April 21, Debtor Red Line filed a similar Complaint at Adversary No. 82–825 against Alpha Environmental Mining Corporation (hereinafter "Alpha") alleging that Alpha on April 15, 1982 removed Red Line Equipment. Additionally, Red Line alleges that Red Line was not in default. It was further alleged that the automatic stay under Section 362 had been violated; however, the primary relief sought was a return of the above equipment under Section 542.

Highway and Alpha answered and presented briefs. A hearing was held the next day on April 22. The Defendant's answer asserted that repossession occurred before the automatic stay became effective, that default occurred on April 15 or earlier, that repossession was proper under 13 Pa.C.S.A. § 1101 et seq., that the Debtor was divested of possession and that only the right to redeem remained.

The Court is aware of the unsettled legal issues that swirl around Section 542. Nowack, "Turnover Following Prepetition Levy of Restraint Under Bankruptcy Code § 542", *Am.Bank.L.J.*, Vol. 55, page 313 (1981); *United States of America v. Whiting Pools, Inc.*, 674 F.2d 144, 5 C.B.C. 2nd, 1584 (2nd Cir. 1982); *United States of America v. Cross Electric Company, Inc.*, 664 F.2d 1218, 5 C.B.C. 2nd, 1273 (1981).

Three other sections of the Code are applicable to this situation. First there is Section 542 which relies on Section 541 to hold that all property of the debtor both legal and equitable are part of the estate.

Debtor may also rely on the preference section (Section 547), which provides that creditors may not improve their position in the ninety days prior to filing. Creditors rely on Section 362(d) and demand that the Debtor provide adequate protection.

ADEQUATE PROTECTION

▮ Nowack, supra, suggests that the importance of Section 541 as it incorporates Section 363 changes the question when there is a prepetition repossession. One should not ask does the repossession remove property from the Debtor but whether the Debtor may have an interest in that property. Nowack argues that state law does not define property of the estate, bankruptcy law does. In other words, if the Debtor can "use, sell or lease the property", under Section 363, the property should be considered property of the estate under Section 541 and liable to turnover under Section 542. See Nowack, supra, at 327–337. This theory eliminates the need for the Debtor to pursue the more cumbersome preference action under Section 547. However, even if we accept in this case that the Debtors could use the property and thus are entitled to turnover, this Court must decide whether the creditors would be adequately protected. If the Debtors cannot provide adequate protection, the turnover question is moot.

On April 22, 1982, Highway filed at Adversary No. 82–836 and Adversary No. 82–835 Complaints to Modify Stay, and on April 29, 1982 at Adversary No. 82–901 Alpha filed a Complaint to Modify Stay.

At the hearing on April 22, 1982, because the issues raised by Section 542 on these facts are not settled matter of law, and because there was not enough time, the Court continued the hearing to April 29, 1982. The Court also announced that it would first hear the Complaint to Modify Stay on the adequate protection issue. Accordingly, on April 29 the Court began to take testimony on the issue of adequate protection. Debtor presented testimony by its President, Bryan Taylor, concerning its expected cash flow and the current value of the equipment repossessed.

Plaintiff's Exhibit # 1 was offered to show potential cash flow of the Debtor. Creditor cross-examined on the ability of the Debtor to achieve forecast results and raising specific doubts about the tonnage, price and cash forecast.

The creditors argued that adequate protection would not be supported by the cash flow forecast and that the Debtor was cash poor and unable to provide adequate protection.

The Debtor reported approximately $20,000 in cash and that the accounts receivable were factored at 70% of the value at a rate of interest of 1½% above prime, and at a service charge of $.50 per ton. Creditors argued that these facts proved their case.

The Debtor presented their views of value using several charts displaying starting purchase price, straight line depreciation (3 years for new, 5 years for used) and actual payout under the contract.

After four hours of hearing, the hearing ran out of time and it was rescheduled for further hearing on May 4, which was cancelled by the parties.

On May 12, 1982, the hearing commenced and continued for six hours.

The Debtor presented Exhibit # 9, which forecast on a daily basis cash flow for Champion and Red Line. The exhibit reports that $40,000 would be available to pay equipment parties every two weeks. The assumptions were similar to Exhibit # 1, but the expenses were more detailed. The Creditors again challenged the forecast as unreliable. Much of the cross-examining was directed toward the adequacy of the maintenance and repair estimates of the forecast.

In summary, the Debtors offered the following monthly payments as adequate protection to their secured creditors of equipment:

| | |
|---|---|
| Highway | $41,881 |
| Alpha | 4,784 |

*Persons not party to this proceeding:*

| | |
|---|---|
| State | $22,997 |
| Keystone | 8,187 |
| Weaver | 2,253 |

Highway by its President, Daniel Reynolds, presented his opinion as to the value of the equipment. He testified that equipment depreciates more rapidly over the first two years and more slowly the remaining years. See Highway Exhibit "G". The theory and rates were challenged on cross-examination.

Alpha by its expert, C. I. "Pete" Pletz, presented his opinion as to the value of the equipment, which was challenged.

In summary, in determining the market value of the equipment, the Court was influenced by the Debtors' arguments that the equipment had a much longer life than the purchase contract provided. Conversely, as to adequate protection, the Court was influenced by evidence that in this business there is a high risk of major repairs being required regularly and that the cash flow available to meet this risk was fragile.

*Alpha*

The Court believes that the market value of the Alpha secured equipment is $220,000.

The Court concludes that adequate protection for Red Line to Alpha requires $14,000 per month. The Debtor offers $5,725 by its exhibits, but on May 12 the offer is modified to $4,784 per month. The offer of Red Line for adequate protection is not adequate.

*Highway*

The Court believes the market value of the Highway secured equipment is $1,450,000.

*(1) Champion*

| | | | |
|---|---|---|---|
| New Fiat Allis, Model 31 repossessed | | SN 2387 | $285,000 |
| New Fiat Allis Model 31 | | SN 2395 | $285,000 |
| New Fiat Allis Model 31 | | SN 2388 | $285,000 |
| Used Fiat Allis, Model 31 repossessed | | SN 1454 | $142,000 |
| New Fiat Allis, Model 945B wheel loader | | SN 2104 | $180,000 |

*(2) Red Line*

| | | | |
|---|---|---|---|
| Used Fiat Allis Model 31 | | SN 1476 | $135,000 |
| Used Fiat Allis Model 31 | | SN 1210 | $118,000 |

The Court concludes that $84,500 is required under these circumstances for adequate protection to Highway. The Debtor's exhibit appears to offer $40,427, but at the May 12 hearing the Court's notes indicate $41,881 was offered. In either case, this offer for adequate protection by the Debtor is not adequate.

Because the Court believes that all other issues raised in these proceedings are moot, they are not decided here.